IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   13-cv-01186-WYD-BNB

VINCENT MACIEYOVSKI,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, DEPARTMENT OF GENERAL SERVICES,

    Defendant.

**ORDER ON SUMMARY JUDGMENT**

I.    <u>INTRODUCTION & BACKGROUND</u>

THIS MATTER is before the Court on Defendant City and County of Denver's (the "City") Motion for Summary Judgment (ECF No. 17), filed March 17, 2014. The City seeks summary judgment on Plaintiff's claims alleging national origin discrimination and unlawful retaliation under Title VII of the Civil Rights Act of 1964. On April 18, 2014, Plaintiff filed a response (ECF No. 20). On May 2, 2014, the City filed a reply (ECF No. 21). For the reasons stated below, the City's motion for summary judgment is denied.

This case arises out of Plaintiff's employment with the City. Plaintiff is a U.S. citizen of Polish national origin. Plaintiff began his employment with the City on or about July 1, 2003, as a Master Trades Worker at the Denver Art Museum. At the time of his hire, Plaintiff held a Bachelor of Science degree in business management and a Masters of Business Administration. Plaintiff also acquired licenses while working for

the City as a Steam and Hot Water Supervisor and a Refrigeration Class A Supervisor. Prior to the events alleged in this case, Plaintiff engaged in protected activity against the City, including Equal Employment Opportunity Commission ("EEOC") charges and Title VII lawsuits.  In the present case, Plaintiff asserts two claims for relief; namely, national origin discrimination and unlawful retaliation under Title VII, as demonstrated by failures to promote and adverse employment actions.  Plaintiff also asserts a hostile work environment claim based on national origin discrimination.

Plaintiff first asserts that he was denied several promotional opportunities while employed by the City despite being more qualified than the individuals selected for the positions.  Between August 31, 2011 and October 21, 2012, Plaintiff applied for six promotional opportunities with the City, including HVAC Superintendent – Denver International Airport ("DIA"), Multiple Trade Supervisor, Energy Manager, Manager 1 Budget, Director of Facilities, and Project Manager.  In each case, Plaintiff asserts that the promotion was awarded to a less qualified non-Polish individual who had not engaged in protected activity.

Plaintiff also asserts that he received several adverse employment actions while employed by the City.  On February 27, 2012, Plaintiff received a letter of reprimand after a January 27, 2012 incident with a co-worker involving the volume of music.  In September 2012, Plaintiff was transferred from the Roslyn Street building to the Police Administration building as part of a department reorganization process.  On May 15, 2013, Plaintiff received a five-day suspension based on a February 21, 2013 driving

incident near the City's building, an unauthorized absence, and failure to follow directive and overall performance. On March 25, 2013, the City altered Plaintiff's work schedule from 7:00 a.m. to 4:00 p.m. with a one-hour lunch break to 8:00 a.m. to 5:30 p.m. with a half-hour lunch break. On June 3, 2013, Plaintiff was placed on a performance improvement plan ("PIP") in order to address performance issues.

Between May 3, 2012 and June 28, 2013, Plaintiff filed four charges of discrimination with the EEOC against the City based on the aforementioned employment actions.

## II.   ANALYSIS

### A.   Standard of Review

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, the court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir.2000). "When applying this standard, . . . [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir.1991).

B.    <u>Whether Summary Judgment is Proper on Plaintiff's Discrimination Claim</u>

The City asserts that summary judgment should be granted on Plaintiff's claim that he was discriminated against by way of failures to promote and adverse employment actions on the basis of his Polish national origin.  The City also asserts that summary judgment should be granted on Plaintiff's hostile work environment claim that is based on national origin discrimination.

To state a valid claim under Title VII, plaintiff must prove by a preponderance of the evidence that the employer engaged in intentional discrimination.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  "A plaintiff alleging discrimination on the basis of race or national origin may prove intentional discrimination through either direct evidence of discrimination (e.g. oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e. circumstantial) evidence of discrimination."  *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir.2000).  When a plaintiff does not have direct evidence of discrimination, a plaintiff may rely on indirect evidence by invoking the analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir.1999).

In *McDonnell Douglas*, the Supreme Court "established an allocation of the burden of production and an order for the presentation of proof in Title VII discriminatory-treatment cases."  *St. Mary's Honor Ctr.*, 509 U.S. at 504.  When the *McDonnell Douglas* analysis is utilized, the burden of production shifts from plaintiff to defendant and back to plaintiff.  *McDonnell Douglas*, 411 U.S. at 802.  If a plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to

present evidence that it had a legitimate nondiscriminatory reason for its action. *Id.* If the defendant meets its burden of production, the plaintiff must then demonstrate that the defendant's proffered explanation is pretextual. *Id.* at 804. Evidence of pretext, plus the establishment of a prima facie case, is sufficient to avoid summary judgment, and plaintiff is not required to present direct evidence of an illegal discriminatory motive. *Reynolds v. School Dist. No. 1*, 69 F.3d 1523, 1534 (10th Cir.1995).

### 1.  Discrimination Based on Failure to Promote

Plaintiff asserts that he was subject to discrimination based on his national origin as demonstrated by six failures to promote. Plaintiff contends that while he was qualified for each promotional opportunity, each position was awarded to a less qualified non-Polish individual. In order to establish a prima facie case for discriminatory failure to promote, Plaintiff must demonstrate that "(1) he is a member of a protected class; (2) he applied for and was qualified for the particular position; (3) he was not promoted despite his qualifications; and (4) the position was filled or remained open after he was rejected." *Cross v. The Home Depot*, 390 F.3d 1283, 1286 (10th Cir.2004).

Even if Plaintiff was qualified for any or all six positions, I find that there are genuine issues of material fact regarding whether the City's nondiscriminatory reasons for hiring each of the six selected candidates are pretextual. Plaintiff asserts that his qualifications were clearly superior to the qualifications of several of the selected employees. Plaintiff held a Bachelor of Science degree in business management and a Masters of Business Administration. Plaintiff also acquired licenses while working for the City as a Steam and Hot Water Supervisor and a Refrigeration Class A Supervisor. Plaintiff states that he was capable of full performance of all of the manual trades and

that he had supervisory experience, including at the Denver Art Museum and at Marathon Oil Company. Plaintiff further states that he had budget and fiscal experience in his previous positions at Marathon Oil, Steiner, and Safeway. Plaintiff concludes that he has established pretext because his qualifications were clearly superior to several of the selectees, including Conway.

Thus, I find that there are genuine issues of material fact regarding whether the City's proffered reasons for selecting the other candidates are pretextual. Therefore, the City's summary judgment motion is denied as to this claim.

### 2. Discrimination Based on Adverse Employment Actions

Plaintiff asserts that he was discriminated against based on his national origin as demonstrated by several adverse employment actions, including a written reprimand, a transfer, a schedule change, a PIP, a suspension, and a denied leave request. In order to establish a prima facie case for discrimination on the basis of national origin, Plaintiff must demonstrate that he: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) received treatment less favorable than others not in the protected class. *Sanchez v. Denver Public Sch.*, 164 F.3d 527, 531 (10th Cir.1998). The City concedes that Plaintiff's suspension and denial of leave qualify as adverse employment actions. However, the City asserts that Plaintiff improperly characterizes the written reprimand, transfer, change of schedule, and PIP as adverse employment actions.

In the Tenth Circuit, the phrase "adverse employment action" is liberally defined and not limited to pecuniary losses such as lost wages for benefits. *Id.* at 532. A case by case approach is utilized to analyze "the unique factors relevant to the situation at

hand." *Id*. Nonetheless, mere "inconvience[s] or alteration[s] of job responsibilities" are not considered adverse employment actions. *Id*. "To be an adverse employment action, the employer's conduct must be 'materially adverse' to the employee's job status." *Paige v. Donovan*, No. 09-cv-01811, 2011 WL 5520298, at *7 (D.Colo. Nov. 14, 2011) (citing *Sanchez,* 164 F.3d at 533). The adverse conduct must "constitute[ ] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Sanchez*, 164 F.3d at 532 (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)) (internal quotations marks omitted).

I find that the voluminous record demonstrates that there are genuine issues of material fact regarding whether the written reprimand, transfer, change of schedule, and PIP were adverse. I also find that there are genuine issues of material fact regarding whether the City's proffered nondiscriminatory reasons for each employment action are pretextual. Therefore, the City's summary judgment motion is denied as to this claim.

### 3.     Discrimination Based on Hostile Work Environment

Plaintiff also asserts that he was forced to work in a hostile work environment while employed by the City based on his national origin. As to a racially hostile work environment claim, the Tenth Circuit has stated that "Title VII forbids employment discrimination on the basis of race or national origin." *Chavez v. New Mexico*, 397 F.3d 826, 831 (10th Cir.2005). In order to "survive summary judgment on a claim alleging a racially hostile work environment, the plaintiff must show that" (1) the harassment was sufficiently severe or pervasive to alter his or her employment conditions and (2) that the harassment stemmed from his or her race or national origin. *Martinez v. City &*

*Cnty. of Denver*, No. 08-cv-01503, 2012 WL 3842616, at *11 (D. Colo. Sept. 5, 2012) (quoting *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir.2012)).

"In making this determination, the court must consider the work environment both objectively and subjectively, . . . look[ing] at all the circumstances from the perspective of a reasonable person in the plaintiff's position." *Simmons v. Potter*, No. 08-cv-02593, 2010 WL 3002038, at *13 (D. Colo. July 29, 2010) (quoting *Herrera v. Lufkin Indus., Inc.,* 474 F.3d 675, 680 (10th Cir.2007)) (internal quotation marks omitted). "Factors that may be considered 'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Simmons,* WL 3002038, at *13 (quoting *Harris v. Forklift Sys.,* 510 U.S. 17, 22-23 (1993)).

Plaintiff asserts that this claim arises out of attacks that went to the very essence of his job. Plaintiff explains that these attacks include claims that his performance was inadequate, that he was a danger to the public, that he failed to show up for work during a snow emergency, and disciplinary suspension from work. Plaintiff also explains that the hostile work environment included micro-management, looking over his shoulder, denying him vacation, taking time off his clock, and harassment. Plaintiff contends that although there were relatively few incidents, they were very serious, and at a minimum there are genuine issues of material fact as to the severity determination.

Based on these facts, I find that there are genuine issues of material fact as to whether Plaintiff was forced to work in a hostile work environment. Thus, summary judgment is denied on this claim.

C.     Whether Summary Judgment is Proper on Plaintiff's Retaliation Claim

The City next asserts that summary judgment should be granted on Plaintiff's claim that he was retaliated against by way of failures to promote and adverse employment actions on the basis of his protected activity.

"Where there is no direct evidence of retaliation, . . . a retaliation claim [is analyzed] under the *McDonnel Douglas* burden shifting framework." *See Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir.2004). To satisfy Plaintiff's prima facie case on a claim of retaliation for having exercised rights pursuant to Title VII, he must show that: (1) he engaged in protected opposition to discrimination; (2) the employer subsequently took action that a reasonable employee would have found materially adverse; and (3) there is a causal connection between his protected activity and the adverse action. *Argo v. Blue Cross and Blue Shield of Kansas*, 452 F.3d 1193, 1202 (10th Cir.2006). "[U]nless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1182 (10th Cir.2006).

In this case, it is undisputed that Plaintiff engaged in protected activity. Most recently, Plaintiff filed charges against the City with the EEOC in May and October of 2012, and in April and June of 2013. Moreover, in addition to filing the present action, Plaintiff previously filed two Title VII lawsuits against the City in 2006 and 2010. Thus, I turn to whether Plaintiff suffered adverse actions.

The Supreme Court has held that "[f]or retaliation purposes, an adverse action is one which 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Foreman v. Western Freightways, LLC*, 958 F.Supp.2d 1270,

1284 (D.Colo.2013) (quoting *Burlington Northern & Santa Fe RR Co. v. White*, 548 U.S. 53, 67-68 (2006)). "Although the action need not affect a change in the terms or conditions of employment, it must nevertheless rise above the types of 'petty slights, minor annoyances, and simple lack of good manners' that are common to many workplaces." *Foreman*, 958 F. Supp. 2d at 1284 (quoting *Burlington Northern & Santa Fe RR Co.*, 548 U.S. at 68). "[T]he significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Jencks v. Modern Woodmen of America*, 479 F.3d 1261, 1266 (10th Cir.2007).

Plaintiff contends that his protected activity resulted in severe retaliation that subjected him to a series of adverse actions and effectively ended any advancement in his career. Nevertheless, Plaintiff asserts that he has received successful performance appraisals from the City throughout his career until, for instance, receiving the PIP.

1. <u>Retaliation Based on Adverse Employment Actions</u>

Plaintiff first asserts that his protected activity resulted in retaliation as demonstrated by a series of adverse actions; namely, a written reprimand, a transfer, a change of schedule, a PIP, a suspension, and a denial of leave. The City does not dispute that Plaintiff's suspension or denial of leave are adverse employment actions. However, the City argues that Plaintiff's written reprimand, transfer, change of schedule, and PIP do not rise to the level of adverse employment actions for Title VII purposes.

Under the Supreme Court's more relaxed definition of adverse action for retaliation purposes, I find that there are genuine issues of material fact as to whether Plaintiff's written reprimand, transfer, change of schedule, and PIP are adverse employment actions. Even assuming that each of these employment actions is

adverse, I further find that there are genuine issues of material fact regarding whether the City's legitimate nondiscriminatory reasons are pretextual. Accordingly, summary judgment is denied as to this claim.

### 2. Retaliation Based on Failure to Promote

Finally, Plaintiff asserts that he was retaliated against based on his protected activity as demonstrated by six failures to promote. Regarding this claim, the City asserts that Plaintiff cannot establish a prima facie case for retaliation because the third element requiring a causal connection has not been met. The City first contends that the temporal proximity between the protected activity and the retaliatory conduct is too remote to establish a causal connection and that Plaintiff has not offered additional evidence to establish a prima facie case for retaliation. However, I find that there are genuine issues of material fact regarding whether Plaintiff's protected activity and the retaliatory conduct occurred within a very close temporal proximity.

The City also explains that Plaintiff cannot demonstrate a causal connection because he had no knowledge of whether the person making the hiring decisions was aware of his previous EEOC charges or lawsuits. The Tenth Circuit has held that "[a]n employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer knows the employee has engaged in protected opposition." *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir.2002). More specifically, a "plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity." *Id.* (quoting *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir.1993)); *see also Petersen*, 301 F.3d at 1190-91 (Affirming summary judgment in favor of employer on retaliation claim and noting that the plaintiff

pointed to no evidence that "anyone in the decision making process even knew of her protected opposition."). Plaintiff does not dispute the City's assertion that he had no knowledge of whether the person making the hiring decisions was aware of his previous EEOC charges or lawsuits. However, Plaintiff notes that his supervisor was aware of his protected activity and that the City does not contend that management was unaware of his prior protected activity. Based on these facts, I find that there is a genuine issue of material fact as to whether anyone in the decision making process was aware of Plaintiff's prior protected activity.

Even if Plaintiff could establish a causal connection, I find that there are genuine issues of material fact regarding whether the City's legitimate nondiscriminatory reasons for selecting the other candidates are pretextual. Thus, I find that the summary judgment is denied as to this claim.

### III.    CONCLUSION

Based on the foregoing, it is

ORDERED that the City's Motion for Summary Judgment (ECF No. 17) is **DENIED.**

Dated:  March 30, 2015.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
SENIOR UNITED STATES DISTRICT JUDGE